**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JONATHAN P. DOLAN, | ) | CASE NO. 5:25-CV-2538 |
| | ) | |
| Plaintiff, | ) | CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | **MEMORANDUM AND ORDER** |
| ADMINISTRATION | ) | |
| | ) | |
| Defendant, | ) | |

## I. Introduction

Jonathan Dolan ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 5). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding.

## II. Procedural History

On July 30, 2024, Claimant filed an application for DIB, alleging a disability onset date of November 15, 2022 and claiming he was disabled due to fibromyalgia, degenerative disk disease, PTSD, right radiculopathy, and tinnitus.  (ECF No. 6, PageID #: 224). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ").  (ECF No. 6, PageID #: 57).  On July 9, 2025, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (ECF No. 6, PageID #: 71–79).  On August 5, 2025, the ALJ issued a written decision finding Claimant was

1

not disabled.  (ECF No. 6, PageID #: 37-54).  The ALJ's decision became final on September 24,

2025,  when the Appeals Council declined further review.  (ECF No.  6, PageID #: 24-29).

On November 21, 2025, Claimant filed his Complaint to challenge the Commissioner's

final decision.  (ECF No. 1).  The parties have completed briefing in this case. (ECF Nos. 7, 8).

Claimant asserts the following assignments of error:

> (1) The ALJ erred when finding that Plaintiff could perform work at the light level of exertion with frequent handling and fingering, since this was not supported by the evidence; and

> (2)  The ALJ committed a harmful error when he failed to apply the proper criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence, and limiting effects of Plaintiff's symptoms prohibited him from engaging in substantial gainful activity on a full-time and sustained basis.

(ECF No. 7, at 1).

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant alleged that he was disabled due to a variety of conditions, including fibromyalgia, degenerative disc disease, radiculopathy, tinnitus, and posttraumatic stress disorder (PTSD) (1E/2). He stated that his impairments forced him to stop working (1E/2). He reported that he struggled to perform any activity aside from go to the restroom many days due to extreme pain (11E/5). The claimant testified that he had back pain going down his right leg, he had poor grip, and he had swelling in his hands (Testimony). He said he had night terrors and he could not sleep for days at a time (11E/5). He described having poor focus and trouble completing tasks (Testimony). The claimant asserted that he could not stand for long periods and he used a cane (11E/6, 10)

(ECF No. 6, PageID #: 45–46).

### B.  Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> The record reflects that the claimant had a history of several conditions predating the alleged onset date in November 2022, including depression and PTSD (2F). In

late 2022 and into early 2023, the claimant had ongoing treatment for opioid dependence (2F). During a November 2023 psychiatry exam, the claimant reported that he had depression and trauma symptoms (2F/137). He was receiving methadone treatment for opioid abuse (2F/137). He appeared slightly depressed with appropriate affect, adequate grooming and hygiene, coherent thoughts, and fair judgment (2F/138). The claimant's mental condition was generally stable through early 2024 and he remained on medication (2F/106-136). The claimant also had persistent low back pain radiating into his right leg but he had no numbness or weakness (2F/126). While he had positive straight leg raising, he had no motor deficits (2F/94). Lumbar spine x-rays showed degenerative changes increased in severity since previous imaging (2F/224). He had similar imaging into the summer and cervical spine x-rays documented degenerative changes and slight straightening with normal reversal of the cervical lordosis (2F/223). Additionally, he had pain and swelling in his hands with poor grip strength although he had no swelling on exam (2F/88, 94, 97). In a rheumatology exam, the claimant had Heberden's nodes bilaterally and 4/5 grip strength on the right but normal on the left (2F/69). Other exams documented normal sensation and reflexes (2F/8). Imaging showed multifocal mild degenerative changes of the hands and wrists (2F/69, 70). Through the spring and summer of 2024, the claimant had continued mental health treatment where he reported depression and symptoms related to previous trauma but his symptoms improved over time (2F/9-102). He noted nightmares and poor sleep (2F/102). While he was depressed, he was attentive and cooperative with coherent thoughts and appropriate grooming (2F/9-103). In September, the claimant had continued mental health treatment and his mood was stable overall (3F/52). He displayed a euthymic mood, cooperative behavior, appropriate grooming, coherent thoughts, and intact memory (3F/52). His mental condition was generally stable through the end of the year and into 2025 (3F; 4F; 6F). The claimant said he was doing well during 2025 (6F/140). He continued with Methadone treatment (5F). The claimant also had continued low back, leg, and bilateral hand pain into 2025 (4F/56; 6F). He had Heberden's nodes and some mildly limited motion in his hands and wrists with 4/5 right grip strength but normal left grip strength (6F/199). He had mild flexion contracture of the hands as well (6F/199). He said he had pain when opening his hands in the morning (6F/90). Imaging showed minimal degenerative changes of the left hand and high-grade partial thickness tear of the 2nd digit extensor tendon slightly proximal to the metacarpal head without significant retraction (6F/102). Moreover, the claimant had neck pain going into his left arm, for which he underwent a steroid injection that provided only short-term relief (6F/80). He described having some numbness in his left fingers, but Lyrica had improved his low back pain (6F/81). Furthermore, the claimant used a BiPap machine to treat obstructive sleep apnea (6F/140).

(ECF No. 6, PageID #: 46–47).

3

**IV.     The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: depression, posttraumatic stress disorder (PTSD), THC and opioid abuse, degenerative disc disease of the lumbar and cervical spine, degenerative joint disease and rheumatoid arthritis of the hands and wrists, obstructive sleep apnea, fibromyalgia, degenerative joint disease of the ankle, and tinnitus (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. He can frequently reach overhead bilaterally. He can frequently handle and finger bilaterally. The claimant can have occasional exposure to vibrations. He can have exposure to noise at the moderate level as defined in the DOT. He must avoid all exposure to hazards, such as unprotected heights and dangerous moving machinery. There can be no fast paced production pace work (i.e., assembly line work or jobs that require strict hourly production quotas). He can have occasional interactions with the public, coworkers, and supervisors. He is unable to perform tandem tasks and he can make simple work-related decisions. He can tolerate occasional changes in a routine work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2022, through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 6, PageID #: 43, 45, 48–50).

4

### V. Law & Analysis

#### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

#### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light

of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Plaintiff raises two issues on appeal. First, Plaintiff contends that at steps four and five the ALJ's finding that Plaintiff could perform work at a light level of exertion with capacity for frequent handling and fingering was not supported by substantial evidence. (ECF No. 7, at 1, 8). Second, Plaintiff contends the ALJ committed error by failing to properly apply SSR 16-3p when examining the intensity, persistence, and limiting effects of Plaintiff's symptoms. (ECF No. 7, at 1). This Court addresses each argument below.

### 1. The ALJ's RFC determination is supported by substantial evidence.

Plaintiff's first assignment of error contends that at steps four and five the ALJ's RFC determination that Plaintiff could perform work at a light exertional level with frequent handling and fingering was not supported by with substantial evidence. (ECF No. 7 at 1, 8). In support of this argument, Plaintiff argues that "[b]ased on the combination of Plaintiff's problems limiting his ability to use his hands and arms on no more than an occasional basis, the ALJ's determination that he could perform work at that level of exertion or any work in the national economy was not

6

supported by substantial evidence requiring a reversal or remand of this matter." (ECF No. 7, at 9). Plaintiff also argues that the ALJ did not build a logical bridge between the evidence and the ALJ's disability determination. (ECF No. 7 at 12). Defendant, however, argues that substantial evidence supports the ALJ's finding that Plaintiff could perform work at a light exertional level that includes frequent handling and fingering. (ECF No. 8, at 8). To support this contention, Defendant notes that the ALJ considered the prior administrative medical findings of Dr. Virender Puri – who opined that Plaintiff could perform light work with frequent handling and fingering. (*Id.*). Defendant also notes that despite Plaintiff's contentions, the ALJ considered Plaintiff's hand arthritis and back problems in his formulation of the RFC. (*Id.*). And Defendant asserts that Plaintiff merely cites competing evidence that does not require remand. (*Id.* at 8–9).

In determining the adequacy of the ALJ's RFC determination, a reviewing court must focus on the explanation given by the ALJ's decision without finding further support in the records not specifically included in the decision. *See Ripley v. Comm'r of Soc. Sec.,* 415 F. Supp. 3d 752, 764 (N.D. Ohio 2019) ("In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence de novo, make credibility determinations, or weigh the evidence"). To find substantial evidence here the Court need look no further than the ALJ's decision. Prior to determining that Dolan could perform light work at Step Four, the ALJ determined Dolan's RFC. (ECF No. 8, PageID #: 79–84). The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). The ALJ formulated an RFC determining that Dolan had the ability,

> To perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. He can frequently reach overhead bilaterally. He can frequently handle and finger bilaterally. The claimant can have occasional exposure to vibrations. He can have exposure to noise at the moderate level as defined in the DOT. He must avoid all exposure to hazards, such as unprotected heights and

7

> dangerous moving machinery. There can be no fast paced production pace work (i.e., assembly line work or jobs that require strict hourly production quotas). He can have occasional interactions with the public, coworkers, and supervisors. He is unable to perform tandem tasks and he can make simple work-related decisions. He can tolerate occasional changes in a routine work setting.

(ECF No. 6, at PageID #: 45). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

In his decision, the ALJ acknowledged Dolan's physical and mental impairments including, depression, posttraumatic stress disorder (PTSD), THC and opioid abuse, degenerative disc disease of the lumbar and cervical spine, degenerative joint disease, and rheumatoid arthritis of the hands and wrists, obstructive sleep apnea, fibromyalgia, degenerative joint disease of the ankle, and tinnitus and determined they were severe impairments at Step Two. (ECF No. 6, PageID #: 43). In his determination of the RFC, the ALJ first considered Dolan's hearing testimony,

> He stated that his impairments forced him to stop working (1E/2). He reported that he struggled to perform any activity aside from go to the restroom many days due to extreme pain (11E/5). The claimant testified that he had back pain going down his right leg, he had poor grip, and he had swelling in his hands (Testimony). He said he had night terrors and he could not sleep for days at a time (11E/5). He described having poor focus and trouble completing tasks (Testimony). The claimant asserted that he could not stand for long periods and he used a cane (11E/6, 10).

(ECF No. 6, PageID #: 46). The ALJ then considered Dolan's mental health treatment records and medications including ongoing treatment for opioid dependence, methadone treatment for opioid

8

abuse; November 2023 psychiatry exam treatment notes, during which Plaintiff reported that he had depression and trauma symptoms, appeared slightly depressed with appropriate affect, adequate grooming, and hygiene, coherent thoughts, and fair judgment; May 2024 psychiatry exam treatment notes where Plaintiff reported depression, nightmares, and poor sleep with improvement of symptom overtime, yet appeared attentive and cooperative with coherent thoughts and appropriate grooming. (ECF No. 6, PageID #: 46, 452–453, 416–417). The ALJ also noted, "[i]n September [2024], the claimant had continued mental health treatment, and his mood was stable overall (3F/52). He displayed a euthymic mood, cooperative behavior, appropriate grooming, coherent thoughts, and intact memory (3F/52). His mental condition was generally stable through the end of the year and into 2025 (3F; 4F; 6F). The claimant said he was doing well during 2025 (6F/140). He continued with Methadone treatment (5F)." (ECF No. 6, PageID #: 46, 605, 613–680, 733, 872).

> Moreover, the ALJ examined Plaintiff's physical health records and treatment,
>
> The claimant also had persistent low back pain radiating into his right leg but he had no numbness or weakness (2F/126). While he had positive straight leg raising, he had no motor deficits (2F/94). Lumbar spine x-rays showed degenerative changes increased in severity since previous imaging (2F/224). He had similar imaging into the summer and cervical spine x-rays documented degenerative changes and slight straightening with normal reversal of the cervical lordosis (2F/223). Additionally, he had pain and swelling in his hands with poor grip strength although he had no swelling on exam (2F/88, 94, 97). In a rheumatology exam, the claimant had Heberden's nodes bilaterally and 4/5 grip strength on the right but normal on the left (2F/69). Other exams documented normal sensation and reflexes (2F/8). Imaging showed multifocal mild degenerative changes of the hands and wrists (2F/69, 70).
>
> The claimant also had continued low back, leg, and bilateral hand pain into 2025 (4F/56; 6F). He had Heberden's nodes and some mildly limited motion in his hands and wrists with 4/5 right grip strength but normal left grip strength (6F/199). He had mild flexion contracture of the hands as well (6F/199). He said he had pain when opening his hands in the morning (6F/90). Imaging showed minimal degenerative changes of the left hand and high-grade partial thickness tear of the 2nd digit extensor tendon slightly proximal to the metacarpal head without

9

significant retraction (6F/102). Moreover, the claimant had neck pain going into his left arm, for which he underwent a steroid injection that provided only short-term relief (6F/80). He described having some numbness in his left fingers, but Lyrica had improved his low back pain (6F/81). Furthermore, the claimant used a BiPap machine to treat obstructive sleep apnea (6F/140).

(ECF No. 6, PageID #: 46, 47). Furthermore, the ALJ considered the opinion of prior administrative medical consultant, Dr. Virender Puri who found that Plaintiff could "… perform light work with never climbing ladders, ropes, or scaffolds… the claimant could frequently reach overhead, finger, and handle bilaterally" and the ALJ found Dr. Puri's opinion "persuasive in general." (ECF No. 6, at PageID #: 47). And courts in this Circuit find that State agency physical consultants' opinions may constitute substantial evidence supporting an ALJ's decision. *See Riffle v. Commr. of Soc. Sec.*, 2025 WL 3280354 (N.D. Ohio Nov. 25, 2025); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue,* 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *see also  Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.")*.*

Nevertheless, Dolan contends that "Plaintiff was precluded from engaging in work at the light level of exertion" and "[t]he record established that Plaintiff had difficulty with his hands and wrists which precluded him from handling and fingering on more than an occasional basis" and this limitation is work preclusive requiring remand. (ECF No. 7, at 9–11). Yet at step four, the ALJ considered medical and non-medical evidence, including Dolan's medical records, hearing testimony, and medical opinions – and the opinion of a state agency physical consultant – to

support his finding that Plaintiff can perform a range of work at the light exertional level. (ECF No. 6 at 45–48). Accordingly, this demonstrates that the ALJ reasonably explained how he considered Dolan's impairments and how he accommodated these symptoms when he formulated Dolan's RFC. Thus, his RFC formulation is supported by substantial evidence. And when supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)).

Yet as Dolan suggests, the Commissioner bears the burden of proof to show "that there is work available in the economy that the claimant can perform" at step five. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). "The step five analysis is meant to determine, given the severity of the impairments already proven, whether there are jobs in the economy which a claimant can perform." *Id*. To meet this burden, the Commissioner must make a finding "supported by *substantial evidence* that [the plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal quotation marks and citation omitted) (emphasis added). "This substantial evidence may be in the form of vocational expert testimony in response to a hypothetical question, . . . if the question accurately portrays [the plaintiff's] individual physical and mental impairments." *Baker v. Barnhart*, 182 F. App'x 497, 500 (6th Cir. 2006) (citations and internal quotation marks omitted); *see also O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 316 (6th Cir. 2020).

The Sixth Circuit has found that "[s]ubstantial evidence may be produced through reliance

on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" *Varley v. Secretary of Health & Hum. Services,* 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir. 1984)) (alteration in original). "While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny,* 745 F.2d at 218; *see also Tennant v. Schweiker,* 682 F.2d 707, 711 (8th Cir. 1982) ("This Court has repeatedly warned that hypothetical questions posed to vocational experts ... should precisely set out the claimant's particular physical and mental impairments.").

As discussed above, the ALJ relied upon substantial evidence in forming Dolan's RFC. The ALJ then posed a hypothetical to the vocational expert that accurately portrayed the RFC and Plaintiff's limitations. In turn, the vocational expert testified that given all of these factors Plaintiff could perform the requirements of representative occupations such as: (1) housekeeper (2) marker, and (3) routing clerk. (ECF No. 6, PageID #: 49). Thus, the ALJ's finding that the RFC does not preclude the performance of light work existing in significant numbers in the national economy is supported by substantial evidence. In sum, the ALJ properly considered Plaintiff's impairments in formulating the RFC and therefore did not err in his consideration of the vocational expert testimony.

**2. The ALJ did not Err in His Evaluation of Plaintiff's Subjective Symptoms.**

Plaintiff's second argument challenges the ALJ's finding that his subjective complaints are inconsistent with the record. (ECF No. 7, at 12 –17). Plaintiff points to evidence on the record that supports the severity of his symptom and argues that the ALJ failed to articulate any supportable

rationale for dismissing the severity of these symptoms. (*Id*. at 16).

Still, the evaluation of a Claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); Social Security Ruling ("SSR") 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304.

Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, at *7-8. The ALJ need not analyze all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.: see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18-cv-1639, 2019 U.S. Dist. LEXIS 102150, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (*citing Rogers*, 486 F.3d at 248–49), *report &*

*recommendation adopted*, 2019 U.S. Dist. LEXIS 133701, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

> First, the ALJ considered Dolan's self-reported symptoms,
>
> He stated that his impairments forced him to stop working (1E/2). He reported that he struggled to perform any activity aside from go to the restroom many days due to extreme pain (11E/5). The claimant testified that he had back pain going down his right leg, he had poor grip, and he had swelling in his hands (Testimony). He said he had night terrors and he could not sleep for days at a time (11E/5). He described having poor focus and trouble completing tasks (Testimony). The claimant asserted that he could not stand for long periods and he used a cane (11E/6, 10).

(ECF No. 6, PageID #: 46). Additionally, the ALJ considered Dolan's activities of daily living including, "handling his grooming, helping to care for pets, and shop[ping]… He also maintained relationships with family members and a significant other." (ECF No.  6, PageID #: 44).

The ALJ also noted inconsistencies between the severity of Plaintiff's alleged symptoms and the record. Despite Plaintiff's mental impairments, the ALJ noted positive cognitive signs like "largely intact cognition, appropriate grooming, cooperative behavior, and coherent thoughts." (ECF No. 6, PageID #: 48). The VA report, which the ALJ considered, even notes that he had a euthymic mood and was overall attentive, which were marked improvements from a November exam the year earlier. (ECF No. 6, PageID #: 605). Therefore, the limitation on work with occasional changes and no fast-paced work properly accounted for Plaintiff's mental depressive symptoms and fatigue, allowing him some role in the work force in line with the limitations suggested by Dr. Souder. (ECF No. 6, PageID #: 48). Turning to Plaintiff's physical impairments, the ALJ noted that "the record did not establish [Plaintiff] required a cane as described." (*Id*.). There was also "no indication of the debilitating pain and inability to function that he alleged." (*Id*.) This is supported by the fact that "his pain generally improved with treatment overall." (*Id*.). Physically, he saw improvement in joint swelling and hand stiffness on medication (ECF No. 6,

14

PageID #: 332). The ALJ then concluded, "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (ECF No.  6, PageID #: 46).

Plaintiff, however, believes there is a contradiction in the rationale used by the ALJ when the ALJ says that the determinable impairment could cause the alleged symptoms but that the symptoms are not consistent with the evidence on the record. (ECF No. 7 at 16). Plaintiff argues that the ALJ failed to identify how his symptoms were supported by the evidence, yet as mentioned above, the ALJ pointed to specific inconsistencies regarding the cane, improvement with treatment, and Plaintiff's level of debilitation. (ECF No. 7 at 16). Yet the ALJ's explanation makes clear that the ALJ found Claimant's testimony regarding his self-reported symptoms, not credible based on the proper factors, including the objective medical evidence, Claimant's daily activities, and Claimant's improvements in his mental health symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *7-8.  Thus, substantial evidence supports the ALJ's conclusion, and this Court must defer to the ALJ's decision. *Wright*, 321 F.3d at 614 (6th Cir. 2003).

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of Social Security's nondisability finding.

Dated: July 20, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

15